SEALED

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FILED
MAR 19 2014
CLERK'S OFFICE
FLINT

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JONATHAN E. WALKER,

        Defendant.

_____/

FILED UNDER SEAL
HON. MARK A. GOLDSMITH
Case No. 12-CR-20287-3

### OPINION AND ORDER DENYING DEFENDANT JONATHAN WALKER'S MOTION TO ENFORCE TERMS OF "KASTIGAR" LETTER AND PROHIBIT GOVERNMENT FROM DISTRIBUTING FBI 302s AND USING THEM AT TRIAL (Dkt. 338)

### I. INTRODUCTION

This matter is before the Court on Defendant Jonathan E. Walker's motion, filed under seal, to prevent the Government from distributing and using at trial documents that discuss interviews the Government had with Defendant. Defendant claims that fundamental fairness surrounding a proffer agreement requires that the materials not be disclosed. The Government responds that Defendant breached the proffer agreement by not agreeing to a polygraph examination and by failing to provide truthful and candid information. Because the Court concludes that Defendant's refusal to take a polygraph examination constituted a material and substantial breach of the agreement, and that the remedy for such a breach is that the Government may disclose the statements, the Court denies Defendant's motion.

### II. BACKGROUND[1]

On March 16, 2011, a single-count indictment was filed in this Court against Defendant, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

---

[1] The following facts are derived from Defendant's motion, the Government's response, and arguments made during the motion hearings.

See Indictment, Case No. 11-20144 (Dkt. 1). In an apparent attempt to obtain a favorable resolution of that matter, Defendant entered into a proffer agreement with the Government on April 20, 2011.[2] See Gov't Resp. at 2; Def. Mem. at 1-2. Pursuant to the agreement, Defendant agreed to provide truthful and complete information to the Government; in exchange, the Government would "consider this proffer in deciding how to resolve th[e] investigation as it relates to" Defendant. See Proffer Agreement, attached to Def.'s Mot.

The proffer agreement contained the following provisions relevant to the instant motion:

> (1) Your client agrees to make a complete and truthful statement of his or her knowledge of (and role in) the matters under investigation, and to fully and truthfully answer all questions.
>
> (2) Except as otherwise specified in this letter, no statement made by you or your client during this proffer discussion will be offered against your client in the government's case-in-chief in any criminal prosecution of your client for the matters currently under investigation.

\* \* \*

> (7) Your client shall, at the option of the government, be given a polygraph examination to verify the truthfulness and completeness of any statement given as part of this agreement. The government shall have the exclusive right to choose the polygraph examiner. If the results of the polygraph examination or conversations with the polygraph examiner indicate that your client has not been truthful, there are no restrictions on the government's use of any information provided or statements made in the proffer discussion.
>
> (8) If your client fails to provide truthful and complete information (such as by making a false statement, providing false

---

[2] Defendant refers to the agreement as a "Kastigar letter." See Def. Mem. at 1. This is incorrect. The letter — which allows derivate use of any information provided — is an informal proffer agreement not subject to the statutory protections under which a Kastigar hearing is required. See United States v. Mendizabal, 214 F. App'x 496, 501-502 (6th Cir. 2006) (noting that an agreement allowing the government to make "derivative use" of the defendant's testimony is a classic informal-immunity agreement); see also United States v. Turner, 936 F.2d 221, 223-224 (6th Cir. 1991) (grant of Kastigar immunity must be approved by United States Attorney in relevant judicial district, a high-ranking official in the Justice Department, and a federal district judge).

> information, omitting facts or otherwise misleading the government), there are no restrictions on the government's use of any statements made by your client or information provided by you or your client. The government may then also bring additional charges against your client based on the failure to provide truthful and complete information, such as perjury, obstruction of justice and false statements charges.

Id.

Defendant first met with the Government pursuant to the letter on April 29, 2011. Def. Mem. at 1. According to Defendant, the investigators asked him about the circumstances surrounding the underlying felon-in-possession charge, as well as "the bigger picture," which is an apparent reference to the investigation that culminated in the charges brought in this case.

On September 7, 2011, Sergeant Michael Angus testified before a grand jury regarding matters resulting in the charges brought in this case. Although the parties have not provided the Court with the transcript of that testimony, it appears that Sergeant Angus suggested to the grand jury that Defendant had provided false information during the April 2011 interview. The precise content of the deficiency and the basis for Sergeant Angus's belief that the information was false are unclear from the limited record before the Court. Nevertheless, Defendant's counsel asserts that he was not made aware prior to Sergeant Angus's appearance before the grand jury that the Government believed his client's statements to be incomplete or untrue. Def. Mem. at 2.

Defendant then met with Government representatives a second time, on April 16, 2012. Def. Mem. at 1. This interview was limited in scope to the circumstances surrounding the felon-in-possession charge. Id. at 1-2. Defendant's counsel claims that, at that time, he still was unaware that the Government considered Defendant's original statements deficient; nor was he aware that Defendant was a target in the Government's investigation for this action. Id.

On May 2, 2012, the grand jury returned an indictment against Defendant in the instant case, charging him with a single count of Racketeering Conspiracy ("RICO conspiracy") and a single count of murder in aid of racketeering. Indictment (Dkt. 3). The original felon-in-possession charge against Defendant was listed as an overt act in the RICO conspiracy count. Id. ¶ 65. The grand jury subsequently returned a first superseding indictment (Dkt. 155). This indictment added two counts against Defendant: (1) attempted murder in aid of racketeering and (2) discharge of a firearm during and in relation to a crime of violence. Id.

In December 2013, the Government informed Defendant's counsel that it intended to disclose and use, in its case-in-chief, Defendant's statements from the two meetings. Gov't Resp. at 3; Tony Vance Aff. at 1-2 (Dkt. 378). The Government's disclosure was based on its belief that Defendant provided false or incomplete information during the April 2011 interview, thereby breaching the proffer agreement. The Government then offered Defendant the opportunity to take a polygraph test, which he declined. Gov't Resp. at 4; Tony Vance Aff. at 1-2. Instead, Defendant filed the instant motion.

The Court held a hearing on Defendant's motion on February 12, 2014. Following the hearing, the Court ordered the parties to submit additional evidence regarding the December 2013 discussions. The Court then held a second hearing on March 11, 2014, after which it requested additional briefing. The Government submitted its supplemental brief on March 13, 2014. Defendant did not submit a supplemental brief.

## III. DISCUSSION

The Sixth Circuit set forth the applicable standards surrounding alleged breaches of proffer agreements in United States v. Fitch, 964 F.2d 571, 574 (6th Cir. 1992):

> To secure a defendant's cooperation in a criminal investigation, the government may informally grant him immunity in exchange for his testimony. United States v. Pelletier, 898 F.3d 297, 301 (2d Cir. 1990). An agreement not to prosecute is contractual in nature, and subject to contract law standards. United States v. Brown, 801 F.2d 352, 354 (8th Cir. 1986). The conditions which will constitute a breach of the immunity agreement are governed by the agreement itself. United States v. Packwood, 848 F.2d 1009, 1012 (9th Cir. 1988). If a firm agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal. Brown, 801 F.2d at 355.

The Government must prove that any breach was "material and substantial." Id.

The Government claims that Defendant breached the agreement in two ways. First, the Government argues that Defendant's refusal to take a polygraph test constituted a breach permitting disclosure. Second, the Government contends that Defendant provided false information, which also breached the agreement. Gov't Resp. at 6-8. The Court agrees that Defendant breached the agreement by refusing a polygraph test, and consequently the Court need not address whether Defendant provided false information.

The proffer agreement between the parties provides, in relevant part:

> (7) Your client shall, at the option of the government, be given a polygraph examination to verify the truthfulness and completeness of any statement given as part of this agreement. The government shall have the exclusive right to choose the polygraph examiner. If the results of the polygraph examination or conversations with the polygraph examiner indicate that your client has not been truthful, there are no restrictions on the government's use of any information provided or statements made in the proffer discussion.

Proffer Agreement at 2. The subject of a polygraph first arose in December 2013, when defense counsel protested the Government's proposed release of Defendant's statements from the proffer

discussions. The Government suggested that Defendant could sit for a polygraph examination, e-mailing Defendant's counsel that "[i]f you believe that your client was honest, I suggest that we test that with a polygraph." The Government emphasized this in another e-mail twenty minutes later, stating that if counsel believed Defendant was truthful, "Mr. Walker is certainly permitted to take a polygraph test as set forth in the terms of the agreement." This language does not amount to the Government actually exercising its "option" under the agreement, because there was no demand or even request that Defendant take a polygraph.

However, the Government clearly demanded that Defendant sit for a polygraph examination during the March 11, 2014 hearing. Defendant refused. There consequently is no question that the Government exercised its option under the agreement, and that Defendant refused despite the agreement's requirement that he "shall" sit for the polygraph upon such a demand. As such, the Court finds that Defendant breached the proffer agreement. See Fitch, 964 F.2d at 574 ("The conditions which will constitute a breach of the immunity agreement are governed by the agreement itself.").

The Court next must determine whether this refusal constituted a material and substantial breach. See id. The purpose behind the proffer agreement is to obtain truthful and complete information from an individual. To effectuate this goal, the proffer agreement provides a number of possible penalties for failing to tell the truth, including use of the statements in any manner, and possible further charges, such as obstruction of justice. The agreement also incentivizes individuals to tell the truth via the threat of a polygraph; the Government warns that if it believes the individual is lying, he or she may be subjected to a polygraph examination by an examiner of the Government's choosing. If the individual fails the polygraph, the agreement puts that

individual on notice that the statements may be used in any manner, which would include evidence of consciousness of guilt.

Moreover, the blunt threat of the polygraph also warns an individual that the truth of the statements may be determined through a means other than a court. As the Government explains in its supplemental briefing,

> [a]bsent the provision, . . . the government is left to prove a breach only through an evidentiary hearing into the truth of the statement. . . . In order to meet its burden at this hearing, the government would be required to identify the statements of other witnesses, including cooperating defendants, in order to prove the falsity of a defendant's statement. Thus, the government is left to choose between enforcing its agreement through the pretrial identification of witnesses at a hearing, or not enforcing its agreement at all. . . . The government entered into its agreement in order to avoid this choice.

Gov't Supp. Br. at 6. Certainly, then, the ability to demand a polygraph examination is an important term, as it sets forth a mechanism for the Government to verify or challenge the truthfulness of a statement without having to bring its own witnesses before the court.

This is not to say that the refusal to sit for the polygraph examination, or even failure of the examination, automatically constitutes a material and substantial breach of the agreement. One can envision a scenario where the topics proposed to be covered at the polygraph examination, or the information deemed to be untruthful, are irrelevant or insignificant to the Government's investigation or decision-making. In such a situation, the breach may not be material and substantial. See Fitch, 964 F.2d at 574-575.

Nevertheless, the Court need not determine the precise bounds of this issue today. The Government has stated that the topics it would have covered during the polygraph examination include: (1) Defendant's denial of shooting Marion Hardy; (2) his denial of shooting A▮▮▮ ▮▮▮ (3) his denial of any knowledge about the handgun found in the trunk of his vehicle; and

7

(4) his omission of dealing crack cocaine when asked about drug dealing. See Gov't Supp Br. at 3. These issues are clearly significant to the Government's case, as they directly relate to the enterprise allegations and other specific counts detailed in the amended first superseding indictment.

Further, the Government argues that Defendant's misrepresentations on these subjects are important to its case because they evidence Defendant's consciousness of guilt, which is generally appropriate for the Government to attempt to establish at a criminal trial. See id. at 2 (citing United States v. Humphrey, 930 F.2d 919 (Table), at *4 (6th Cir. 1991) and Sixth Circuit Criminal Pattern Jury Instruction 7.14). Utilizing the polygraph provision as a means to introduce these misrepresentations — because Defendant failed the test or refused to take it — would likely improve the Government's case. And it does so while avoiding the necessity of prematurely subjecting its witnesses to cross examination at a pretrial hearing to determine if Defendant lied, which would be the Government's only option if the Court were to disregard Defendant's polygraph breach. Given the importance of the proposed subjects to the Government's case, and the critical utility of the polygraph option, the Court finds that Defendant's refusal to sit for the examination constituted a material and substantial breach of the proffer agreement.

As for the remedies available for this breach, the Sixth Circuit has held that the parties are "limited to those remedies specified in the agreement." Fitch, 964 F.2d at 575. The proffer agreement does not expressly state what will happen in the event that Defendant refuses a polygraph; rather, the agreement provides that "[i]f the results of the polygraph examination or conversations with the polygraph examiner indicate that your client has not been truthful, there are no restrictions on the government's use of any . . . statements made in the proffer

8

discussion." Nevertheless, the Court sees no material distinction — and Defendant fails to identify any — between refusing to take a polygraph examination and taking the test but failing it; in either situation, the purpose behind the polygraph provision in the proffer agreement is undermined. The Court, therefore, treats Defendant's refusal to take the requested polygraph as equivalent to him failing it, entitling the Government to the same remedy of disclosure. See United States v. Gillion, 704 F.3d 284, 291-293 (4th Cir. 2012) (breach of agreement occurred when defendant walked out of the exam partway through, despite language in the agreement only mentioning failing, rather than refusing, the test).

In response, Defendant attempts to fashion a "fairness" argument based on the Government's delay in invoking its rights under the agreement. Specifically, with respect to the polygraph, Defendant maintains that the Government only recently asked him to take the examination — i.e., after the filing of the indictment in this case and the Government's assertion that it intended to disclose the statements. Defendant argues that it would make no sense for him to agree to a FBI-administered polygraph examination more than two years after the initial meeting, and with the indictment in the instant action now pending against him. Defendant claims there is no way that he could pass such a test.

This argument is similar to the one raised in Gillion, where the defendant signed a proffer agreement before his indictment was returned. In the agreement, the defendant agreed to "submit to polygraph examination(s) by any qualified polygraph examiner should [he] be requested to do so," and acknowledged that "[f]ailure to pass to the satisfaction of the Government any polygraph examination administered pursuant to this Agreement constitutes a breach of the Agreement." Gillion, 704 F.3d at 290. The defendant then made certain admissions during his interview with the Government.

A federal grand jury returned an indictment against the defendant approximately five months later. Id. at 291. The Government subsequently requested the defendant submit to a polygraph examination before trial so as to test the truthfulness of his original proffer statements. The defendant argued the proffer agreement had no effect post-indictment; the trial court disagreed and required the defendant to sit for the examination or be found in breach. Id. The defendant subsequently started the examination, but left midsession because he claimed the questions were out of scope. Id. The district court found the defendant to be in breach of the agreement. Id.

On appeal, the defendant once again argued that the proffer agreement lost effect post-indictment, id. at 292-293, which the Fourth Circuit rejected. It held that "[n]othing in the Agreement before us suggests a temporal limitation. Rather, it requires [the defendant] to be 'fully truthful and forthright at any stage.'" Id. As a result, the court affirmed the trial court's "reject[ion] [of] the defendant's argument that either the terms of the contract, or constitutional law or criminal law, generally requires that the polygraph must be taken pre-indictment." Id. at 293.

Similarly here, Defendant has identified no temporal limitation in the agreement regarding when the Government can request the polygraph. Nor may the Court read such a provision into the agreement. See United States v. Bryant, 905 F. Supp. 2d 877, 887 (C.D. Ill. 2012) (holding that the court would not read into the agreement a temporal limitation on defendant's obligations because, in part, the defendant "would also expect that the Government's duty to refrain from using his statements against him does not terminate"). Accordingly, the

Court is not persuaded by Defendant's argument that his refusal to take the polygraph was not a breach because of when the request was made.[3]

Defendant raises additional arguments, but they address the breach based on Defendant's alleged lying, not his polygraph breach. As explained below, they are moot, or otherwise lack merit.

Defendant argues that if the Government truly believed he had breached the agreement by lying during the first investigation in April 2011 — as implied by Sergeant Angus before the grand jury in September 2011 — then it was unjust for the Government to hold the second session with Defendant in April 2012. See Def. Mot. at 3. The implication of Defendant's argument is that the Government's use of any statements from the second interview would be inequitable.

This argument is moot because it has no bearing on the polygraph breach. Moreover, the Government agreed during the original motion hearing only to disclose statements made during the first session. Therefore, any purported impropriety that may have arisen from the

---

[3] At the initial motion hearing, Defendant characterized this argument as one of "laches." Defendant does not provide any authority supporting his claim that the equitable doctrine of laches applies in this context. Nevertheless, the decision in Gillion and the language of the proffer agreement undermine a laches claim. Moreover, the laches doctrine serves as a defense against plaintiffs who unduly delay in seeking affirmative relief from a court of equity. See Francis C. Amendola, et al., 30A C.J.S. Equity § 158 (Mar. 2014) ("For laches to apply, the plaintiff must have knowledge, or the means of knowledge of his or her right, or the facts which created his or her cause of action, but nonetheless fail to timely assert it. . . . After the facts have become known to a party, he or she must use a reasonable diligence to enforce his or her right."); see also Silva v. CH2M Hill Inc., No. 307699, 2013 WL 5629768, at *6 (Mich. Ct. App. Oct. 15, 2013) (rejecting laches argument because the parties asserting it were the plaintiffs, not the defendants); Wiand v. Wiand, No. 301621, 2012 WL 934103, at *2 (Mich. Ct. App. Mar. 20, 2012) ("The equitable doctrine of laches requires a plaintiff to exercise due diligence to ensure the timely prosecution of the claim to avoid unduly prejudicing the defendant."); Rowry v. Univ. of Michigan, 490 N.W.2d 305, 309 (Mich. 1992) ("In failing to raise laches in its responsive pleadings or by motion, the defendant has waived this affirmative defense."). Here, Defendant is the party seeking affirmative relief, not the Government. Therefore, the affirmative defense of laches is inapplicable.

11

Government's decision to continue asking Defendant questions, despite having suggested to the grand jury that he did not previously provide candid and truthful answers, is of no consequence.

Next, Defendant contends that the Government should have notified him before December 2013 of the purported breach based on the April 2011 statements, so as to provide him an opportunity to "cure." Defendant's "cure" argument is flawed, however, because Defendant does not seek to "cure" his refusal to undergo a polygraph examination.

Furthermore, Defendant identifies no duty — set out in the agreement, established by statute, or recognized in case law — requiring the Government to notify him of the breach or to allow him a chance to cure. To the contrary, Defendant's counsel conceded at the original motion hearing that the terms of the proffer agreement do not require the Government to disclose the potential breach immediately. Defendant could have demanded a provision within the proffer agreement requiring the Government to notify him within a certain period if it thought Defendant was in breach, and providing Defendant a chance to remedy any such breach. Such provisions are common in civil contracts. See, e.g., Kacheli Cleaning, Inc. v. Project Smooth Michigan, L.L.C., No. 294265, 2010 WL 4679585, at *2 (Mich. Ct. App. Oct. 18, 2010) (contract allowed for termination if no cure within 30 days of receiving written notice of a breach); Lyndon Property Ins. Co. v. E. Kentucky Univ., 200 F. App'x 409, 411 (6th Cir. 2006) ("The contract provides that, in the event of either party's failure to perform, the aggrieved party shall provide thirty days notice to the other party to cure the defect or the contract shall terminate at the aggrieved party's option."). But Defendant did not insist on a notice or cure provision, and the Court will not read such requirements into the agreement now.[4]

---

[4] Defendant raises two additional arguments that are not well-articulated or well-grounded. First, Defendant cursorily mentions that the Court "can exclude certain evidence" under Federal Rule of Evidence 403 "if its admission would be more prejudicial than probative." Def. Mot. at 5. This argument is not well explained or supported in Defendant's briefing. A court need not

The Court recognizes the difficult position Defendant now faces. But this cannot excuse Defendant from his obligations — (1) to provide truthful and complete information and (2) to submit to a polygraph examination upon Government demand — and the agreed-upon remedies for failing to meet those obligations. The Government argues that Defendant failed regarding both of these duties, but it is clear that — at a minimum — Defendant did not meet the independent requirement to take a polygraph. And as the Court has discussed, such a refusal was a material and substantial breach of the agreement in light of the topics the Government intended to cover during the examination. Accordingly, the Government is entitled to the remedy provided by the agreement: "[T]here are no restrictions on the government's use of any information provided or statements made in the proffer discussion." See Proffer Agreement at 2.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion (Dkt. 338). In light of the Government's concession at the motion hearing, however, the Government may only disclose those statements obtained during the April 29, 2011 session.

---

address an argument that is not developed. See Rivet v. Stat Farm Mut. Auto Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (refusing to address "arguments that . . . are unsupported or undeveloped"). Accordingly, the Court rejects this argument.

Defendant also claims that "[a]s far as [he] is concerned, he recalls only that as long as he did not testify contra[ry] to what he said in his interviews with [the Government], then his words would not be used against him." Def. Mot. at 2. This argument is clearly undermined by the plain language of the agreement that allows the Government to use Defendant's statements if he is untruthful or if he fails the polygraph — and the absence of any language limiting the exercise of that right only in the event the Defendant testifies. See Proffer Agreement at ¶¶ 7-8.

[5] This decision should not be interpreted as a ruling on the admissibility of these statements under the Federal Rules of Evidence.

SO ORDERED.

Dated: March 19, 2014            s/Mark A. Goldsmith
       Flint, Michigan              MARK A. GOLDSMITH
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2014.

                                                  s/Deborah J. Goltz
                                                  DEBORAH J. GOLTZ
                                                  Case Manager