UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,         HON. MARK A. GOLDSMITH

v.         Case No. 12-CR-20287-3

JONATHAN WALKER, D-3,

        Defendant.
_____/

## OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

A jury returned a verdict against Defendant Jonathan Walker on July 22, 2014, finding him guilty of the following crimes: (i) Racketeering (RICO) Conspiracy (Count One); (ii) Murder of Marion Hardy in Aid of Racketeering (Count Three); (iii) Attempted Murder of AG (Alonzo Golfin) in Aid of Racketeering (Count Thirty-Seven); and (iv) Use and Discharge of a Firearm During and in Relation to a Crime of Violence (Count Thirty-Eight). The Probation Department prepared a Presentence Investigation Report ("PSIR") for sentencing, to which Jonathan Walker prepared objections. The Probation Department and the Government responded to Jonathan Walker's objections, see Gov't Resp. (Dkt. 765),[1] and Jonathan Walker filed a reply (Dkt. 771). The Court now addresses and overrules Jonathan Walker's objections.

**A. OBJECTION 1**

Jonathan Walker first objects to the addition of an enhancement for obstruction of justice in Paragraphs 27, 33, 39, and 45 — as well the mention of the fight underlying this enhancement in Paragraphs 17 and 20 — of the PSIR. The event at issue was a fight in jail between Jonathan Walker and Deondrick Morgan. Jonathan Walker raises three arguments as to why the inclusion

---

[1] Neither Jonathan Walker's objections to the PSIR, nor the Probation Department's response, is filed publicly on the docket.

of this event is improper: (i) it was only listed as an overt act, not a count of conviction; (ii) it was not presented to the jury, nor pronounced as a unanimous determination by them; and (iii) the "obstruction" view of the fight was not supported at trial.

With respect to Jonathan Walker's first and second argument, the Court agrees with the Probation Department and the Government that the inclusion of this event — based on an overt act listed in the indictment, see Am. First Superseding Indictment at Count One, ¶ 67 (Dkt. 191) — did not increase the statutory maximum or minimum penalty Jonathan Walker faced, and, therefore, did not need to be presented to, nor decided by, the jury. See United States v. Corrado, 227 F.3d 528, 542 (6th Cir. 2000) ("The existence of relevant conduct is determined at sentencing by a preponderance of the evidence."). Jonathan Walker has cited no applicable authority for his suggestion that only counts of conviction determined by a jury can be used for purposes of applying sentence enhancements. And case law holds to the contrary. See United States v. Yannotti, 541 F.3d 112, 129 (2d Cir. 2008) ("[A] sentencing court may consider predicate acts as relevant conduct under U.S.S.G. § 1 because their commission need not be proven beyond a reasonable doubt."); United States v. Massino, 546 F.3d 123, 134-135 (2d Cir. 2008) ("When the offense of conviction is a RICO conspiracy, relevant conduct may include underlying predicate acts, even if not proven at trial beyond a reasonable doubt, as long as the sentencing court finds that they were proven by the lower preponderance of the evidence standard." (quotation marks and citation omitted)); see also United States v. Garcia, 754 F.3d 460, 482 (7th Cir. 2014).

The Court also rejects Jonathan Walker's third argument — that the evidence does not support a finding that this fight is sufficient for an obstruction-of-justice enhancement. Darryl Scott testified at trial that he was in the Genesee County Jail with Jonathan Walker and

Deondrick Morgan in March 2011, when Walker and Morgan got into a fight.  See D. Scott Vol. II at 5.  According to Scott, Jonathan Walker said that the fight was about Morgan "talking too much."  Id.  Scott testified that Morgan was scheduled to testify or had testified against Shawn Gardner — another member of the Howard Boys — and that Walker told Morgan to "[k]eep his mouth closed."  Id. at 5-6.  Further, in a subsequent phone call, Jonathan Walker acknowledged that he fought Morgan because Morgan had been "running his" mouth.  Ex. 604.

The Court concludes that this is sufficient to show, by a preponderance of the evidence, that Jonathan Walker started this fight as a result of Morgan's testimony against Gardner.  The prosecutor in Gardner's case called Morgan to testify on March 25, 2011; this fight occurred four days later — on March 29, 2011.  See T. Sondgeroth, 7/9/2014 (Rough Tr.) at 92-93.  Furthermore, both Jonathan Walker and Gardner were members of the Howard Boys, and there was extensive testimony and evidence at trial about the need to stop snitches, i.e., those that were cooperating with law enforcement.  Indeed, as explained in the Court's Opinion and Order denying Defendants' post-trial motions (Dkt. 786), this was one of the purposes and/or means and methods of the group: evading law enforcement by using threats and violence to dissuade witnesses from "snitching."  In addition, one of the deputies in the jail testified that Jonathan Walker appeared to have been the aggressor in the fight.  See P. Pascal, 7/9/2014 (Rough Tr.) at 78.  And Walker's statements — that Morgan had been "talking too much" and needed to "[k]eep his mouth closed" — in combination with the timing of the fight, leads to the reasonable inference that Jonathan Walker assaulted Morgan because Morgan had testified against another member of the group, and Walker wanted to prevent similar testimony or cooperation by Morgan or others against the enterprise in the future.

Therefore, the Court overrules Jonathan Walker's objection.

**B. OBJECTION 2**

Jonathan Walker next objects to certain paragraphs of the PSIR, claiming that "[i]t is not appropriate to score any of the overt acts which are not VICAR and are not counts of conviction." In support of this claim, Walker points to United States Sentencing Guidelines §§ 1B1.1 and 1B1.2, which refer to offenses "of conviction." Accordingly, Walker claims his drug conduct — Overt Act 28 — and his Felon-in-Possession charge should not be scored.

With respect to the Felon-in-Possession charge, the Probation Department recognized that the Government dismissed this count, and, therefore, it was removed from the PSIR. Accordingly, it appears that this dispute has been resolved.

With respect to the drug conduct, the Court first notes that the inclusion of this conduct did not impact Jonathan Walker's ultimate base offense level, in light of the offense level calculation for the murder of Marion Hardy. See PSIR, ¶¶ 48-54.

Further, the Court concludes that this conduct was appropriately included. United States Sentencing Guideline ("U.S.S.G.") § 2E1.1 governs the calculation of the base offense level for purposes of a RICO or RICO-Conspiracy conviction. Under that guideline, the base offense level shall be the greater of: (1) 19 or (2) the offense level applicable to the underlying racketeering activity. "Conduct is 'underlying racketeering activity' under § 2E1.1 if it is 'relevant conduct' as defined in U.S.S.G. § 1B1.3(a)(1)." United States v. Campbell, 567 F. App'x 422, 425 (6th Cir. 2014). That section defines "Relevant Conduct" as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and "in the case of a jointly undertaken criminal activity . . ., all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . ." U.S.S.G. §§ 1B1.3(a)(1)(A), (B).

4

Application Note 1 to U.S.S.G. § 2E1.1 provides further guidance for courts in calculating the offense level for a RICO-based conviction:

> Where there is more than one underlying offense, <u>treat</u> <u>each</u> <u>underlying</u> <u>offense</u> <u>as</u> <u>if</u> <u>contained</u> <u>in</u> <u>a</u> <u>separate</u> <u>count</u> <u>of</u> <u>conviction</u> for the purposes of subsection (a)(2). To determine whether subsection (a)(1) or (a)(2) results in the greater offense level, apply Chapter Three, Parts A, B, C, and D to both (a)(1) and (a)(2). Use whichever subsection results in the greater offense level.

<u>Id.</u> (emphasis added); <u>see</u> <u>also</u> Chapter 3, Part D – Multiple Counts, Introductory Commentary ("Some offenses, <u>e.g.</u>, racketeering and conspiracy, may be 'composite' in that they involve a pattern of conduct or scheme involving multiple underlying offenses. The rules in this Part are to be used to determine the offense level for such composite offenses from the offense level for the underlying offenses."). Consequently, although the predicate drug acts may not have been separate counts of conviction, the sentencing guidelines instruct that they are to be treated as such for purposes of the RICO guideline calculations. And, as described above, the Court need only find these predicate acts — <u>i.e.</u>, underlying offenses — by a preponderance of the evidence.

Given that these underlying acts constituted relevant conduct for the RICO-Conspiracy conviction, the PSIR appropriately treated them as separate counts of conviction and applied Chapter Three — including the grouping rules — in calculating the applicable offense level. <u>See</u> <u>United States v. Carrozza</u>, 4 F.3d 70, 77 (1st Cir. 1993) (holding that "the term 'underlying racketeering activity' in § 2E1.1(a)(2) means simply any act, <u>whether</u> <u>or</u> <u>not</u> <u>charged</u> <u>against</u> <u>defendant</u> <u>personally</u>, that qualifies as a RICO predicate act under 18 U.S.C. § 1961(1) and is otherwise relevant conduct under § 1B1.3" (emphasis added), which suggests the act need not be a count of conviction).

In his reply in support of his objections, Jonathan Walker argues that "[to] apply the grouping rules to allegations (overt acts), which were not separately charged and counts of

5

conviction is at the very least double-dipping, or the unconstitutional 'piling-on' proscribed by Alleyne, and Apprendi." Jonathan Walker Reply at 3-4. This is wrong. Application Note 1 to U.S.S.G. § 2E1.1 states that the Court should treat the underlying offenses as separate counts of conviction, and apply the grouping rules, for purposes of determining the applicable offense level for the RICO count. Further, Jonathan Walker fails to explain how this constitutes "double-dipping," particularly given that (i) the conduct was used to determine the base offense level for Count One (RICO Conspiracy), and, nevertheless, (ii) it had no impact on his ultimate offense level in this case. See PSIR, ¶¶ 48-54; see also ¶ 18 ("The drugs seized during prior arrests, which led to convictions, were not included in the offense level computation as those offenses were scored as prior criminal history.").

Nor does Jonathan Walker explain how considering this conduct constitutes a violation of Alleyne and/or Apprendi, which require a jury to make any findings that increase a statutory maximum or minimum, not a guideline range. See United States v. Louchart, 579 F. App'x 492, 495 (6th Cir. 2014) ("In binding published opinions, we have already held that the Supreme Court's decision in Alleyne did not change the preponderance of the evidence standard for fact finding under the Sentencing Guidelines."); United States v. Hinson, No. 12-20837, 2015 WL 400985, at *4 (E.D. Mich. Jan. 28, 2015) ("Numerous courts, including the Sixth Circuit, have concluded that Alleyne and Apprendi do not apply when the fact at issue changes the advisory sentencing guidelines, rather than the statutory mandatory minimum or maximum."); see also United States v. White, 551 F.3d 381, 383-386 (6th Cir. 2008) (a district court may rely even on acquitted conduct in computing sentence enhancements, so long as it does not increase the sentence beyond the statutory maximum).

Accordingly, the Court overrules this objection.

6

## C. OBJECTION 3

Finally, Jonathan Walker raises a similar objection to the above with respect to other conduct, claiming that the grouping rules were misapplied with respect to the shooting of Dartanian Edwards because this was an overt act, not a count of conviction. Jonathan Walker also argues that the grouping rules do not apply to a count of conviction for violating 18 U.S.C. § 924(c), connected to an underlying crime of violence.

With respect to the latter argument, the Court agrees with the Probation Department that the inclusion of the section 924(c) conviction in Paragraph 47 of the PSIR had no effect on Jonathan Walker's base offense level. Rather, this information was included solely to address the fact that this conviction results in a sentence of imprisonment that is consecutive to any other sentence. Indeed, this conviction was expressly excluded from Paragraphs 48 through 51 of the PSIR, which calculate the offense level using a multiple-count adjustment. See U.S.S.G. § 2K2.4(b). Accordingly, because this conviction was excluded from the other guideline calculations, the Court overrules Jonathan Walker's objection regarding the inclusion of this conviction.

Regarding Jonathan Walker's first argument, the Court rejects this claim for the same reasons described above. Application Note 1 to U.S.S.G. § 2E1.1 states that the Court should "treat each underlying offense as if contained in a separate count of conviction," and that it should "apply Chapter Three, Parts A, B, C, and D" — which include the grouping rules. Accordingly, the Court rejects Jonathan Walker's assertion that the shooting of Edwards was improperly scored.

Moreover, as with the drug offenses described above, the shooting of Edwards had no impact on Jonathan Walker's total offense level, in light of the offense level calculation for the murder of Marion Hardy. See PSIR, ¶¶ 48-54.

Accordingly, the Court overrules this objection.[2]

SO ORDERED.

Dated: May 18, 2015      s/Mark A. Goldsmith
     Detroit, Michigan      MARK A. GOLDSMITH
                                      United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 18, 2015.

                                      s/Johnetta M. Curry-Williams
                                      Case Manager

---

[2] Notably, Jonathan Walker claims that there can "only be 3 groups — RICO Count 1, murder of Marion Hardy Count 3, and Attempted Murder of [Golfin], Count 37. So, the multiple count adjustment reflected in paragraph 54 needs to be recalculated." Jonathan Walker Reply at 5. But Paragraphs 48 through 54 of the PSIR reflect that multiple-count offense-level adjustments were only applied for the murder of Marion Hardy and attempted murder of Golfin; no such offense level adjustments applied for the drug crimes, the Felon-in-Possession charge, the section 924(c) violation, or the shooting of Dartanian Edwards. See U.S.S.G. § 3D1.4 (explaining the increase in offense levels based on multiple-count adjustments). Therefore, the Court fails to understand how Jonathan Walker envisions the offense level adjustments being recalculated.