UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 12-cr-20287

v

HON. MARK A. GOLDSMITH

JONATHAN WALKER,

        Defendant.

_____/

**OPINION & ORDER
GRANTING THE GOVERNMENT'S MOTION TO DISMISS DEFENDANT'S MOTION
TO VACATE SENTENCE (Dkt. 1009) AND DISMISSING WITH PREJUDICE
DEFENDANT'S MOTION TO VACATE SENTENCE (Dkt. 1001)**

        This matter is before the Court on the Government's motion to dismiss Defendant Jonathan Walker's motion to vacate sentence under 28 U.S.C. § 2255 (Dkt. 1009). The Government contends that dismissal is warranted because the motion was untimely filed. For the reasons explained in greater detail below, the Government's motion is granted because Walker's motion to vacate is time-barred (Dkt. 1001).

**I. BACKGROUND**

        On July 22, 2014, a jury convicted Walker of (i) racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1923(a) and 1962(d), (ii) murder in aid of racketeering in violation of 18 U.S.C. §§ 2 and 1959(a)(1), (iii) attempted murder in aid of racketeering in violation of 18 U.S.C. §§ 2 and 1959(a)(5), and (iv) use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c). See Jury Verdict Form (Dkt. 712). On May 29, 2015, the Court sentenced Walker to life imprisonment for the RICO and murder convictions, to ten years' imprisonment for the attempted murder conviction, and to ten years' imprisonment for the use-of-a-firearm conviction, with the final

sentence to run consecutively to the others. Judgment (Dkt. 800).

On August 4, 2017, the Sixth Circuit affirmed Walker's conviction and sentence, see United States v. Gills, 702 F. App'x 367 (6th Cir. 2017), and on October 1, 2018, the Supreme Court denied Walker's petition for a writ of certiorari, see Walker v. United States, 139 S. Ct. 63 (2018). On October 9, 2019, Walker filed his motion to vacate sentence under 42 U.S.C. § 2255 (Dkt. 1001). In lieu of filing a response, Government filed a motion to dismiss Walker's motion on the ground that it is untimely.[1]

## II. ANALYSIS

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state and federal prisoners have a one-year limitations period in which to file a habeas corpus petition. Johnson v. United States, 457 F. App'x 462, 464 (6th Cir. 2012). That period begins to run from one of four specified events, the relevant event in the present case being "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). In the present action, there is no dispute that Walker's conviction became final on October 1, 2018, the date the Supreme Court denied his petition for certiorari. See Drury v. United States, 507 F.3d 1295, 1296 (11th Cir. 2007) ("[W]e have held that a conviction becomes final the day the Supreme Court denies a petition for certiorari or issues a decision on the merits."). Accordingly, Walker was required to file a motion to vacate no later than October 1, 2019.

Under the "prison mailbox rule" set forth under Rule 3(d) of the Rules Governing Section 2255 Proceedings, filings made "by an inmate confined in an institution [are] timely if deposited

---

[1] The Government also argued that Walker's motion was unsigned and undated. Mot. at 2. However, because the Court is granting the Government's motion on the grounds of the untimeliness of Walker's motion, it need not address the Government's arguments with respect to Walker's failure to sign his motion.

2

in the institution's internal mailing system on or before the last day for filing." Rule 3(d) goes on to provide that "[i]f an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule." See also United States v. Rodriguez, 422 F. App'x 668, 670 (10th Cir. 2011) (holding that an inmate was not entitled to the benefit of the prison mailbox rule where he mailed his habeas petition using the prison's regular mail system without establishing that the jail did not have a legal mail system). The burden is on the party claiming entitlement to the prison mailbox rule to allege and prove that he or she made timely use of the legal mail system, if one is available. Mitchell v. Medina, 488 F. App'x 296, 299 (10th Cir. 2012). But "[w]hen a pro se prisoner alleges that he timely complied with a procedural deadline by submitting a document to prison authorities, the district court must either accept that allegation as correct or make a factual finding to the contrary upon a sufficient evidentiary showing by the opposing party." Faile v. Upjohn Co., 988 F.2d 985, 989 (9th Cir. 1993).[2]

It is undisputed that the Terre Haute Federal Correctional Complex ("Terre Haute") has a legal mail system in place. See Morin Decl., Ex. B to Gov't Mot., ¶ 5 (Dkt. 1009-3); Mail Management Manual, Ex. A to Gov't Reply, at 3-5 (Dkt. 1018-3). However, the parties dispute whether Walker used this system to mail his motion. Walker avers in an affidavit that on September 26, 2019, he submitted his motion for mailing at the legal mailroom. Walker Aff., Attachment to Resp., at 1 (Dkt. 1013).

The Government, in turn, presents evidence demonstrating that Walker mailed his motion using the prison's regular mail system. According to Steve Morin, a Terre Haute official familiar

---

[2] Faile was criticized on other grounds in McDowell v. Calderon, 197 F.3d 1253, 1255 n.4 (9th Cir. 1999) (noting that Faile neglected to specify that "only a failure to correct clear error constitutes abuse of discretion" in the context of a motion for reconsideration).

3

with the prison's procedures regarding outgoing mail, a certified mail tracking number matching the tracking number that appears on the envelope for Walker's motion, see Walker Mot., PageID.12945 (Dkt. 1001), was entered on the prison's certified mail log on the morning of October 3, 2019, see Morin Decl. ¶¶ 1-2, 7.³ Morin stated that the certified mail log tracks envelopes and parcels "mailed via certified mail and placed in the regular outgoing mailboxes." Id. ¶ 6 (emphasis added).

Moreover, Brad Shoemaker, a Terre Haute official who supervises the mailroom staff, described the procedures in place for submitting legal mail. According to Shoemaker, an inmate must verify his identity by presenting an identification card before his legal mail will be accepted. Shoemaker Decl., Ex. A to Gov't Reply, ¶ 10 (Dkt. 1018-2). After an inmate's identity is confirmed and mailroom staff verify the addressee is a proper recipient of legal mail, an ink stamp indicating "inmate identification confirmed" is placed on the envelope. Id.; see also Mail Management Manual at 5. Additionally, every piece of mail submitted via the prison's legal mail system bears a second ink stamp indicating the institution's name and the date on which the mail was submitted by the inmate to mailroom staff. Morin Decl. ¶ 5; Shoemaker Decl. ¶ 10. Both Morin and Shoemaker stated that if a piece of mail lacks these stamps, it was not submitted using the legal mail system. Morin Decl. ¶ 5; Shoemaker Decl. ¶ 10.

It is clear from the Government's evidence that Walker did not avail himself of the prison's legal mail system to file his motion to vacate sentence. The tracking number appearing on the envelope for Walker's motion was entered in the prison's log used to record regular, certified mail

---

³ The tracking history demonstrates that the motion arrived at a United States Postal Service facility on October 3, 2019. Tracking History, Ex. A to Gov't Mot. (Dkt. 1009-2). In order for mail to be delivered to the postal service on any given day, it must have been deposited into the mailbox in an inmate's housing unit on the previous day, by no later than 9:00 p.m. Morin Decl. ¶¶ 8-9.

4

as opposed to legal mail. Further, the envelope does not bear any ink stamps indicating that he used the legal mail system. See Walker Mot., PageID.12945-12946. Walker insists that he used the legal mail system to file his motion but that mailroom staff failed to stamp it or send it promptly. See Walker Aff. at 2. But this assertion is contradicted by the objective evidence that Walker's motion was recorded in a log used to track regular, certified mail. Such evidence is sufficient to rebut a prisoner's claim that he used the legal mail system:

> The pro se prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

Houston v. Lack, 487 U.S. 266, 275 (1988); see also Burton v. Martin, No. 18-CV-201, 2018 WL 5793862, at *5 (N.D. Okla. Nov. 5, 2018) (finding that a habeas petitioner's statements that he used the legal mail system were rebutted by the prison's legal mail logs). Consequently, Walker is not entitled to the benefit of the prison mailbox rule, and his motion is deemed filed on the date on which it was received by the Court—October 9, 2019. Thus, his motion is untimely.

In the event that his motion is deemed untimely, Walker urges the Court to equitably toll the one-year limitations period. Resp. at 4 (Dkt. 4). Because AEDPA's one-year limitations period is not jurisdictional, it is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). Equitable tolling is available only where a prisoner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Ata v. Scutt, 662 F.3d 736, 741 (6th Cir. 2011) (quoting Holland, 560 U.S. at 649); see also Hall v. Warden, Lebanon Corr. Inst., 622 F.3d 745, 749 (6th Cir. 2011). The doctrine, however, is to be applied sparingly. Ata, 662 F.3d at 741.

According to Walker, he was prevented from filing a timely motion because Terre Haute was on lockdown status from September 17, 2019, through September 22, 2019, and on modified lockdown status from September 23, 2019, through September 30, 2019. Id. at 1-2. Walked claims that during the first lockdown, inmate movement was completely restricted, while the modified lockdown permitted limited movement such that inmates were able to collect food from the cafeteria in the afternoon. Id. at 2; Walker Aff. at 1.

The Government rebuts Walker's claims with evidence demonstrating that the prison was not in lockdown status on those dates. According to Shoemaker, prison officials keep record of lockdowns and modified operating statuses in lieutenant logs. Shoemaker Decl. ¶ 3. These logs reflect that the prison was not operating under lockdown status from September 23, 2019, through September 30, 2019. Id. ¶ 5. Rather, on September 23, 2019, the prison secured inmates in their cells only during breakfast and after 4:00 p.m., while on September 24, 2019, inmates were secured within their cells and units only during the afternoon and evening hours. Id. ¶ 6. On September 26, 2019, the inmates were confined to their cells at approximately 1:00 p.m., but the prison resumed normal operations in the evening. Id. ¶ 7.

Even assuming that the prison was operating under lockdown status during the timeframe alleged by Walker, he has not established that this amounted to an extraordinary circumstance preventing him from timely filing his motion. According to Shoemaker and the prison's policies, inmates are permitted to send legal mail on a daily basis, even during a lockdown. Id. ¶ 8; Mail Management Manual at 4-5. Indeed, Walker claims that he was allowed to deliver his motion to the mailroom after notifying prison staff members of his deadline. Walker Aff. at 1. Moreover, while Walker states that the lockdown was in effect through September 30, 2019, he does not explain why he would have been unable to send his legal mail the following day—the filing

deadline of October 1, 2019. For these reasons, Walker has failed to establish that his circumstances warrant equitable tolling.

### III.  CONCLUSION

For the reasons discussed above, Walker's motion to vacate was filed untimely under 28 U.S.C. § 2255(f)(1), and he has failed to establish circumstances that would justify equitable tolling. Accordingly, the Court grants the Government's motion to dismiss (Dkt. 1009). Walker's motion to vacate is dismissed with prejudice as time-barred (Dkt. 1001).

SO ORDERED.

Dated: June 29, 2020  s/Mark A. Goldsmith
 Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 29, 2020.

 s/Karri Sandusky
 KARRI SANDUSKY
 Case Manager